UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

IN ADMIRALTY

CASE NO.:

ACCELERANT SPECIALTY INSURANCE
COMPANY, HADRON SPECIALTY INSURANCE
COMPANY, PALOMAR EXCESS AND SURPLUS
INSURANCE COMPANY, TEXAS INSURANCE
COMPANY, and LLOYD'S SYNDICATES
a/s/o ARGYLL MARINE LLC, as owner of the
vessel "OFF DUTY",

     Plaintiffs,

vs.

RIVER FOREST YACHTING CENTER, LLC,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, ACCELERANT SPECIALTY INSURANCE COMPANY ("Accelerant"), HADRON SPECIALTY INSURANCE COMPANY ("Hadron"), PALOMAR EXCESS AND SURPLUS INSURANCE COMPANY ("Palomar"), TEXAS INSURANCE COMPANY ("TCI"), and LLOYD'S SYNDICATES a/s/o ARGYLL MARINE LLC, as owner of the vessel "OFF DUTY", a 2005 Marlow Motor Yacht bearing Hull Identification Number XXE78111F505 (hereinafter

"Vessel"), by and through undersigned counsel, and hereby sue Defendant, RIVER FOREST YACHTING CENTER, LLC and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages in excess of $75,000, exclusive of interest, costs, and attorneys' fees.

2.    This is a subrogation action arising from the catastrophic destruction of both main propulsion engines aboard the motor yacht M/V OFF DUTY, a 2005 Marlow 78-foot motor yacht (HIN: XXE78111F505), owned by Argyll Marine, LLC. The engines failed on December 3, 2024, while the vessel was underway on the Okeechobee Waterway, as a direct and proximate result of grossly negligent marine engine service work performed by Defendant River Forest Yachting Center, LLC.

3.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. Alternatively, this action falls within the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, as this is a civil case of admiralty and maritime jurisdiction. This action arises from a maritime tort and a breach of a maritime contract for the servicing and repair of a vessel engaged in navigation upon navigable waters of the United States, namely the Okeechobee Waterway.

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

4.      Plaintiffs, as subrogees of Argyll Marine LLC, bring this action having paid the insured's claim arising from the constructive total loss of both diesel engines and resulting vessel damage. Plaintiffs are entitled to recover the amounts paid, together with costs, interest, and all other damages available at law or in admiralty.

5.      Venue is proper in the Middle District of Florida, Fort Myers Division, pursuant to 28 U.S.C. § 1391, as Defendant, River Forest Yachting Center, LLC, is located at 1992 Williams Road, Moore Haven, Florida 33471, which is within this District, and the tortious acts and omissions giving rise to this action occurred within this District.

**<ins>PARTIES</ins>**

6.      At all material times, Argyll Marine LLC was the owner of the 2005 Marlow 78-foot motor yacht M/Y OFF DUTY (the "Vessel").

7.      Plaintiff, Accelerant Specialty Insurance Company, is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia, which issued marine hull and machinery coverage to Argyll Marine LLC, under Policy No. CSRYP/2405934, holding a thirty percent (30%) interest in the claim. Accelerant brings this action as subrogee of Argyll Marine LLC, having paid its proportionate share of the insured loss.

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

8.      Plaintiff, Hadron Specialty Insurance Company, is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arkansas, with its office and principal place of business located in the State of Georgia, which issued marine hull and machinery coverage to Argyll Marine LLC, under Policy No. CSRYP/2405934, holding a thirty percent (30%) interest in the claim. Hadron brings this action as subrogee of Argyll Marine LLC, having paid its proportionate share of the insured loss.

9.      Plaintiff, Palomar Excess and Surplus Insurance Company, is and was a domestic surplus lines insurer organized and existing under the laws of the State of Arizona, with its office and principal place of business located in the State of California, which issued marine hull and machinery coverage to Argyll Marine LLC, under Policy No. CSRYP/2405934, holding a twenty percent (20%) interest in the claim. Palomar brings this action as subrogee of Argyll Marine LLC, having paid its proportionate share of the insured loss.

10.     Plaintiff, Texas Insurance Company, is and was a domestic surplus lines insurer organized and existing under the laws of the State of Texas, with its office and principal place of business located in the State of Nebraska, which issued marine hull and machinery coverage to Argyll Marine, LLC, under Policy No. CSRYP/2405934, holding an eleven percent (11%) interest in the claim. Texas

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

Insurance Company brings this action as subrogee of Argyll Marine LLC, having paid its proportionate share of the insured loss.

11.    Plaintiffs, Lloyd's Syndicates, specifically Aegis Syndicate No. 1225 AES (4%) and Talbot Syndicate No. 1183 TAL (5%), per UMR B0507G02400002, are Lloyd's of London syndicates, who is and was an insurance managing general agent organized and existing under the laws of the United Kingdom, with its office and principal place of business located in the United Kingdom, participating in marine hull and machinery coverage issued to Argyll Marine LLC, under Policy No. CSRYP/2405934, collectively holding a nine percent (9%) interest in the claim. These syndicates bring this action as subrogees of Argyll Marine LLC, having paid their proportionate share of the insured loss.

12.    Defendant, River Forest Yachting Center, LLC (hereinafter "River Forest"), is a Florida limited liability company with its principal place of business at 1992 Williams Road, Moore Haven, Florida 33471. River Forest is a commercial marine service and storage facility that holds itself out to the public as a provider of professional yacht service, maintenance, and repair, including engine oil changes and other maintenance services for large motor yachts.

## GENERAL ALLEGATIONS

13.    The Vessel is a 2005 Marlow 78-foot motor yacht owned by Argyll Marine LLC, powered by twin MTU V10 CR diesel inboard engines. The vessel was

5

insured under Policy No. CSRYP/2405934, administered by Concept Special Risks Ltd. and underwritten by Plaintiffs.

14.     River Forest has provided seasonal storage and marine maintenance services for the M/V OFF DUTY for many years, including engine oil changes during the vessel's lay-up periods.

15.     On or about May 28, 2024, River Forest performed an oil and filter change on both of the vessel's MTU diesel engines.

16.     The oil change was performed while the vessel was out of the water on jackstands. Under these circumstances, it was impossible to run the engines after the oil was changed to circulate oil through the filters and engine galleries, and thereafter properly level the oil as required by standard marine industry protocols and the MTU engine manufacturer's specifications.

17.     At all material times, River Forest owed duties to exercise reasonable care in the storage, maintenance, service, recommissioning, and handling of the Vessel and its machinery, and to perform all such work in a competent and workmanlike manner consistent with applicable standards and accepted marine practice.

18.     Because the Vessel was on the hard, the engines could not be properly operated in their ordinary service condition following the oil change for purposes of

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

distributing oil through the engines and filters and then accurately rechecking and leveling the oil.

19. Proper marine engine service and recommissioning required River Forest to ensure that the engines contained the correct oil levels and were safe for return to service before the Vessel departed its facility.

20. On December 2, 2024, River Forest personnel launched the M/V OFF DUTY from seasonal storage. River Forest mechanics assisted with the initial engine startup, including bleeding the fuel system—a task that had not been properly completed—and started both main engines and the vessel's generators. The vessel was then moved to a slip to prepare for departure the following morning.

21. On December 3, 2024, at approximately 6:45 a.m., Captain James Kenyon, the vessel's named operator, and first mate, Mark Bentley, departed River Forest aboard the M/V OFF DUTY, bound for Fort Lauderdale, Florida, via the Okeechobee Waterway.

22. After departure, the Vessel initially operated at idle and displacement speeds, was briefly brought up on plane, and later resumed higher-speed operation after clearing a lock and no-wake area.

23. Shortly thereafter, the starboard main engine catastrophically exploded.

24. More specifically, on December 3, 2024, approximately five miles east of Liberty Point on the Okeechobee Waterway, the starboard MTU diesel engine

7

triggered a high exhaust temperature safety shutdown alarm followed immediately by a catastrophic mechanical explosion within the engine room. The starboard engine block suffered a complete catastrophic failure, blowing a large hole through the side of the block and ejecting internal engine components throughout the engine room.

25.     Thereafter, the Vessel was rendered disabled and had to be anchored and then towed back to River Forest.

26.     Following the casualty, substantial oil and internal engine components were observed in the engine room, and both engines had sustained catastrophic damage.

27.     The catastrophic failure of both engines was directly and proximately caused by the presence of excessive oil in the engines and River Forest's negligent and unworkmanlike oil-change, service, inspection, recommissioning, and/or return-to-service work.

28.     River Forest was the last entity known to have changed the oil and filters on the engines before the casualty.

29.     River Forest knew or should have known that improper oil fill levels, improper recommissioning, and failure to verify correct oil levels before departure created a substantial and foreseeable risk of catastrophic engine damage.

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

30.   As a direct and proximate result of River Forest's acts and omissions, the Vessel sustained catastrophic engine failure and extensive resulting damages.

31.   Plaintiffs have paid and/or will pay covered losses arising from the casualty and is subrogated to the Assured's rights to recover those sums from River Forest.

32.   The damages arising from the casualty are substantial and include, without limitation, damage to both MTU engines, towing, related investigation and adjustment expenses, and other covered losses. As a result of the casualty, Plaintiffs have paid and/or will pay covered losses in an amount believed to exceed $1,000,000.00.

## Count I – General Negligence

33.   Plaintiffs reallege and incorporate by reference each and every allegation in Paragraphs one (1) through thirty-two (32) as if fully set forth herein.

34.   River Forest owed the Assured a duty to exercise reasonable care in connection with the storage, maintenance, servicing, recommissioning, inspection, launch, and return to service of the Vessel and its engines.

35.   River Forest breached that duty by, among other things:

    a.   improperly changing the oil in the Vessel's engines;

    b.   allowing the engines to contain excessive oil;

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

c.      failing to properly inspect, verify, and confirm correct oil levels before returning the Vessel to service;

d.      failing to use reasonable care in recommissioning engines that had been laid up for an extended period;

e.      failing to recognize and correct unsafe engine conditions before the Vessel's departure;

f.      failing to follow accepted marine service procedures and standards; and

g.      otherwise failing to act as a reasonably prudent marine service provider would have acted under the same or similar circumstances.

36.      As a direct and proximate result of River Forest's negligence, the Vessel suffered catastrophic engine failure and consequential damages.

37.      Plaintiffs have been damaged thereby and are entitled to recover all amounts paid and/or payable under its policy by way of equitable and contractual subrogation.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, pre-judgment and post-judgment interest, taxable costs, and such other relief as the Court deems just and proper.

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

## Count II – Negligent Workmanship/Negligent Marine Services

38.    Plaintiffs reallege and incorporate by reference each and every allegation in Paragraphs one (1) through thirty-two (32) as if fully set forth herein.

39.    River Forest undertook the performance of professional marine services on the Vessel, including oil and filter changes, fuel filter work, recommissioning assistance, and return-to-service functions.

40.    In undertaking that work, River Forest owed a duty to perform its services in a safe, competent, and workmanlike manner consistent with the skill and care ordinarily exercised by reasonably prudent marine service providers.

41.    River Forest breached that duty by performing the oil and related engine service in a careless, improper, and unworkmanlike manner, including by returning the engines to service with excessive oil and failing to properly verify final oil levels under conditions necessary for safe operation.

42.    River Forest further breached its duties by failing to properly recommission the Vessel after a lengthy storage period and by allowing the Vessel to depart in an unsafe and defective condition.

43.    The negligent workmanship and negligent marine services of River Forest directly and proximately caused the hydraulic lock event, the starboard engine explosion, the port engine shutdown and failure, and the resulting damage to the Vessel.

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

44. Plaintiffs have suffered damages as a direct and proximate result of River Forest's negligent workmanship and negligent marine services.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, pre-judgment and post-judgment interest, taxable costs, and such other relief as the Court deems just and proper.

### Count III – Negligent Training and Supervision

45. Plaintiffs reallege and incorporate by reference each and every allegation in Paragraphs one (1) through thirty-two (32) as if fully set forth herein.

46. River Forest had a duty to adequately train and supervise its employees and technicians in the proper procedures for performing marine engine service work, including but not limited to oil changes on MTU diesel engines, compliance with OEM specifications, proper oil level verification, and manufacturer-required recommissioning procedures.

47. River Forest negligently failed to adequately train its technicians in the proper procedures for servicing high-performance MTU marine diesel engines, including proper oil quantity requirements, post-change oil level verification, and launch protocols.

48. River Forest negligently failed to supervise its technicians in the performance of the oil change service on the M/V OFF DUTY, allowing the

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

technician to place an excessive quantity of oil into both engines without adequate supervision, verification, or quality control review.

49.    River Forest's negligent training and supervision of its employees was a direct and proximate cause of the catastrophic engine failures and resulting damages described herein.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, pre-judgment and post-judgment interest, taxable costs, and such other relief as the Court deems just and proper.

## Count IV – Negligent Entrustment

50.    Plaintiffs reallege and incorporate by reference each and every allegation in Paragraphs one (1) through thirty-two (32) as if fully set forth herein.

51.    River Forest negligently entrusted the performance of specialized, high-stakes engine maintenance work on the M/V OFF DUTY's MTU diesel engines to a technician who lacked the requisite skill, training, experience, and competence to safely and properly perform such work.

52.    River Forest knew, or in the exercise of reasonable care should have known, that its technician was not adequately qualified to perform oil change services on high-performance MTU marine diesel engines without risk of damage to those engines or the vessel.

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

53.     River Forest's negligent entrustment of this work to an unqualified technician was a direct and proximate cause of the catastrophic engine failures and resulting damages described herein.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, pre-judgment and post-judgment interest, taxable costs, and such other relief as the Court deems just and proper.

## <u>Count V – Breach of Maritime Contract</u>

54.     Plaintiffs reallege and incorporate by reference each and every allegation in Paragraphs one (1) through thirty-two (32) as if fully set forth herein.

55.     River Forest and Argyll Marine LLC entered into a maritime contract for the performance of engine maintenance services, including oil and filter changes on both MTU diesel engines of the M/V OFF DUTY, as evidenced by Invoice No. 905929, dated May 28, 2024.

56.     This agreement constitutes a maritime contract, as it involves the repair and maintenance of a vessel engaged in maritime commerce and navigation.

57.     River Forest materially breached its contractual obligations by:

    a.     failing to perform the oil change service in a workmanlike manner consistent with applicable industry standards;

    b.     overfilling both engines with an excessive quantity of oil in violation of OEM specifications;

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

c.    failing to properly complete the service by running and leveling the oil after the change; and

d.    failing to properly recommission both engines prior to the vessel's return to navigation.

58.    As a direct and proximate result of River Forest's breach of the maritime contract, Argyll Marine LLC suffered a constructive total loss of both MTU diesel engines and substantial vessel damage, which Plaintiffs have paid for and/or will pay for.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, pre-judgment and post-judgment interest, taxable costs, and such other relief as the Court deems just and proper.

## Count VI – Breach of Implied Warranty of Merchantability

59.    Plaintiffs reallege and incorporate by reference each and every allegation in Paragraphs one (1) through thirty-two (32) as if fully set forth herein.

60.    River Forest, in the course of its commercial operations as a marine service facility, impliedly warranted that the engine oil it supplied and installed in the M/V OFF DUTY's engines was of merchantable quality and suitable for use in the MTU diesel engines, and that the quantity supplied was appropriate and consistent with OEM specifications.

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

61.    River Forest breached the implied warranty of merchantability by supplying and installing engine oil in quantities grossly exceeding the OEM-specified capacity of both engines, rendering the supplied product unfit for its intended purpose and directly harmful to the engines in which it was installed.

62.    As a direct and proximate result of this breach, both engines suffered catastrophic and total failure for which Plaintiffs have paid and/or will pay.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, pre-judgment and post-judgment interest, taxable costs, and such other relief as the Court deems just and proper.

## Count VII – Breach of Express and Implied Warranty

63.    Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs one (1) through thirty-two (32) as if fully set forth herein.

64.    By undertaking the engine oil change service on the M/V OFF DUTY and holding itself out as a professional marine service facility, River Forest expressly and/or impliedly warranted that:

    a.    it would perform the oil change service in a competent and workmanlike manner;

    b.    it would comply with the MTU manufacturer's specifications and requirements; and

16

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

c.    the service work, once completed, would leave the engines in safe, operable, and seaworthy condition.

65.    River Forest breached these express and implied warranties by performing the oil change in a grossly deficient manner, overfilling both engines, failing to complete the required post-service oil level verification, and returning the vessel to navigation with engines that were unsafe and subject to catastrophic failure.

66.    As a direct and proximate result of River Forest's breach of warranty, the M/V OFF DUTY sustained catastrophic engine failure and substantial damage for which Plaintiffs have paid and/or will pay.

**WHEREFORE**, Plaintiffs demand judgment against Defendant for compensatory damages, pre-judgment and post-judgment interest, taxable costs, and such other relief as the Court deems just and proper.

## Count VIII – Breach of Bailment

67.    Plaintiffs reallege and incorporate by reference each and every allegation in Paragraphs one (1) through thirty-two (32) as if fully set forth herein.

68.    When Argyll Marine LLC delivered the M/V OFF DUTY to River Forest for seasonal storage and maintenance services, a bailment relationship was created. River Forest, as bailee, accepted possession and custody of the vessel and assumed the duties and obligations of a bailee for mutual benefit.

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

69.    As a bailee for mutual benefit, River Forest owed a duty to exercise ordinary and reasonable care for the safekeeping and maintenance of the M/V OFF DUTY during the period of storage, and to return the vessel to its owner in the same condition as received, absent reasonable wear and tear.

70.    River Forest breached its duties as bailee by failing to exercise reasonable care over the vessel in its custody, including by performing negligent and defective engine oil change services that left both engines in a dangerously overfilled condition, and by failing to detect and correct this dangerous condition before returning the vessel to its owner for navigation.

71.    As a direct and proximate result of River Forest's breach of its bailment duties, the M/V OFF DUTY sustained catastrophic engine failure and substantial damage.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory damages, pre-judgment and post-judgment interest, taxable costs, and such other relief as the Court deems just and proper.

DATED:  May 15, 2026
           Miami, FL

HORR, SKIPP & PEREZ, P.A.
TWO DATRAN CENTER, SUITE 1700 – 9130 SOUTH DADELAND BOULEVARD, MIAMI, FL 33156

/s/ Brasilia Echevarria
**JUAN CARLOS PEREZ, JR.**
Florida Bar No.: 91581
jperez@admiral-law.com
**BRASILIA ECHEVARRIA**
Florida Bar No.: 121828
bechevarria@admiral-law.com
**JACOB P. IRMEN**
Florida Bar No.:  1049221
jirmen@admiral-law.com
**HORR, SKIPP & PEREZ, P.A.**
Two Datran Center, Suite 1700
9130 S. Dadeland Boulevard
Miami, FL 33156
Telephone: (305) 670-2525
Facsimile: (305) 670-2526
***Attorneys for Plaintiff***